## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| IN RE:<br><br>DOUGLAS S. FULLERTON,<br><br>Debtor. | Case No. 20-00962-tjc<br>Chapter 12<br><br>**OBJECTIONS TO SECOND AMENDED CHAPTER 12 PLAN** |

Creditor Lincoln Savings Bank ("LSB") makes the following objections to the Debtor's Second Amended Plan of Reorganization, Dkt. 68 & 76 (the "Plan"), and reserves its right to make additional objections as information becomes available and through the end of confirmation proceedings, and states:

1. <u>Lien Retention</u>. The Plan, including Paragraphs 3.5, 5.4, 5.8, 5.9, and 5.12, does not provide for the complete maintenance of LSB's mortgage and security interests on retained collateral. 11 U.S.C. § 1225(a)(5)(B). Debtors may modify secured claim repayment, but they may not modify liens in bankruptcy. All rights given to LSB in the agreements pledging collateral must be preserved, and nowhere does the Plan provide for this. *E.g. In re Heath*, 483 B.R. 708, 713 (Bankr. E.D. Ark. 2012) ("The authority to modify a secured claim under § 1222(b)(2) does not supersede the lien-retention requirement of § 1225(a)(5)(B)(i)."); *In re Michels*, 301 B.R. 9, 14 (Bankr. N.D. Iowa 2003). All provisions of the loan documents must be preserved and remain in effect except as modified by the plan, as allowed under the Bankruptcy Code. LSB is entitled to retain all of its liens until its secured claim is repaid in full, and seeks clarification that sections 5.4, 5.8, 5.9, and 5.12 do not infringe upon full lien retention.

2. <u>Cash Collateral and Collateral Sales and Proceeds</u>. Paragraph 5.1 and 5.9 of the Plan allows the Debtor to use cash collateral without further application or approval of the Court.

These paragraphs violate the lien retention requirement of section 1222(a)(5)(B) and do not comply with ordinary restrictions on the use of cash collateral, which bars confirmation, 11 U.S.C. § 1225(a)(1); 11 U.S.C. § 363; 11 U.S.C. § 552. Further, any collateral sales must be subject to LSB's approval and security interests, and all proceeds must be paid to LSB for the Plan to comply with section 1222(a)(5)(B). Further, the Debtor needs to specify what collateral he plans to sell and when under Paragraph 5, and ensure commercially reasonable sale terms that are subject to LSB's approval. 11 U.S.C. § 1225(a)(5)(C).

3. <u>Not Feasible</u>. The Plan does not sufficiently demonstrate that the Debtor will be able to make all payments under the Plan and otherwise comply with the Plan as required by section 1222(a)(6). The Plan and its attachments do not identify changes to the Debtor's farming operation that will enable him to make payments. Rather, the Debtor proposes farming under his status quo, which has resulted in high five-figure and six figure losses in each of the last four years. His income and expense projections contradict his prior statements, past practices, and realistic expectations in a grain operation. Each of these and other issues make the Plan not feasible. The Debtor did not file monthly operating reports since those grounds were first advanced as a basis for case dismissal months ago. His failure to comply with Chapter 12 reporting requirements and provide interested parties with recent income or expense information creates genuine doubt that the Debtor can and will comply with the Plan.

4. <u>Interest Rate</u>. The Debtor proposes to lower his previously stated interest rates, which were already too low and not confirmable. LSB holds a sizeable secured claim, and the Debtor's proposed means of repayment is unproven. The *Till* decision dictates that that Debtor must compensate LSB for longer opportunity costs and collateral devaluation, risk of inflation over the amortized periods, and risk of the Debtor's default. *See Till v. SCS Credit*

*Corp.*, 541 U.S. 465 (2004). LSB submits that it should receive 1.5% risk factor above what the Debtor's senior home lender is entitled to receive, which accommodates for LSB's more risky, junior position on real estate and also for greater risk with personal property collateral loss and devaluation. Because that amount (5.25% + 1.75% = 6.75%) is greater than the amount LSB previously stated as acceptable (6.625%), it maintains that a 6.625% annual interest rate is acceptable for the Debtor's Plan, subject to adjustment for amortizations beyond ten years. 11 U.S.C. §§ 1222(a)(4)-(5)(B)(ii).

5. <u>Misstatement of Secured Status</u>. Contrary to Paragraph 3.4, the claim of Marvin and Rana Wilson is not secured. Iowa Code § 570.1 requires landlords to file financing statements to perfect any landlord's lien. A search of UCC records on file with the Iowa Secretary of State's office shows no such financing statement for Marvin or Rana Wilson. Further, no landlord has priority over LSB's interests in grain collateral, making them unsecured. Iowa Code § 570.1(2).

6. <u>Payment Terms and Amount</u>. The Debtor proposes to pay other creditors at regular intervals beginning soon after confirmation. He proposes to first pay LSB, by contrast, in the spring of 2022 and over eighteen months after his petition date. The Debtor is sitting on 2019 and 2020 soybean collateral that must be used to repay LSB, and provides no reason why LSB should wait 12 more months for those proceeds. Further, grain farmers annually harvest in the fall, and have income available at that time to make payments. Payments should start immediately upon confirmation, and continue biannually or, if annually, by November 30 of each year. The Debtor's discriminatory proposal for LSB demonstrates an instance of bad faith repayment term selection in violation of section 1225(a)(3). Further, LSB requests that the Debtor provide the calculations he made to amortize LSB's secured claim and repayment

amount. The Plan appears to under-calculate secured claim payments. 11 U.S.C. §§ 1222(a)(4)-(5)(B)(ii). Amortizations should not exceed 5-7 years for any payments allocated to personal property, and amortizations beyond ten years must include interest rate adjustments. 11 U.S.C. §§ 1222(a)(4)-(5)(B)(ii).

7. <u>Secured Claim Value</u>. The Debtor continues to misreport the value of LSB's claim. LSB explicitly stated the ongoing, contingent, and not fully liquidated nature of interest and fees allowed under the Debtor's loan documents and that LSB is entitled to claim and have repaid under 11 U.S.C. § 506. *E.g. In re Family Pharmacy, Inc.*, 614 B.R. 58, 66 (B.A.P. 8th Cir. 2020). LSB is willing to amend its claim within thirty (30) days of any final confirmation order, to add accrued fees and other costs including interest at the rate stated in its loan documents. The full value shown in that amendment, assuming additional fees and costs do not accrue and the Debtor does not object, is the secured claim that must be repaid by the Debtor. Any attempt to limit that amount does not comply with the Bankruptcy Code.

8. <u>Periodic Reporting</u>. The Debtor is retaining and not surrendering a significant amount of LSB's personal property collateral. Due to that retention, LSB's rights as a secured creditor, and the unproven nature of proposed cash flows, the Debtor needs to continue Chapter 12 monthly reporting obligations. 11 U.S.C. § 1203 (incorporating duties of trustee within section 1106(a)(1) (incorporating the monthly reporting requirement of 704(a)(8))). This should include providing LSB with copies of his tax returns within 30 days after filing, and at the same time, a signed balance sheet and statement of cash flows.

9. <u>Purported Claim Against Lincoln Savings Bank</u>. The Debtor suggests one basis for plan feasibility lies in a claim he purports to hold against Lincoln Savings Bank. Plan ¶ 5.1. The Debtor on the advice of counsel refused to answer any and all questions about this claim

at his 341 meeting of creditors, and those questions did not implicate advice of counsel or counsel's work product. He has now refused to identify basic facts and information in response to written discovery. Advancing such claims as real, and a basis for plan feasibility, while denying LSB the opportunity to learn basic information violates the Debtor's responsibility to provide information, 11 U.S.C. § 1203; 11 U.S.C. § 1225(a)(1), and shows that this plan in not being completely proposed in good faith, as required, 11 U.S.C. § 1225(a)(3).

10. <u>Double Default Notices</u>. The Debtor has given himself two opportunities to cure defaults instead of one. Paragraph 5.14 says that a payment default is not a default if the payment is made within thirty days of its due date. And then, if not made (thus a default), the Debtor gives himself a forty-five additional days to cure. 11 U.S.C. § 1225(a)(3). LSB is amenable to a twenty day cure period following written notice of default in substitution of the Debtor's proposal.

11. <u>Notices</u>. Paragraph 5.15 needs to include a method of notice besides overnight delivery service that cannot be returned for failure to find the named individual at the given address. Certified mail is acceptable if the Plan includes language that notice is complete upon mailing.

12. <u>Severability</u>. The severability clause at the end of the Debtor's plan should be deleted. To the extent the necessary provision does not comply with section 1225, it may not merely be severed, because in its absence the Plan remains not confirmable.

13. <u>Section 1232</u>. Debtor's counsel should strongly consider including liquidation provisions and de-prioritization of claims as allowed under section 1232. He should also consider providing proper notice to the IRS and Iowa Department of Revenue for the Plan and confirmation proceedings.

WHEREFORE, Lincoln Savings Bank asks that the Court sustain these objections and deny plan confirmation.

Dated February 10, 2021

        Respectfully submitted,

        SIMMONS PERRINE MOYER BERGMAN PLC

        /s/ Abram V. Carls
        Lynn Wickham Hartman, AT0003365
        Abram V. Carls, AT0011818
        115 Third Street SE, Suite 1200
        Cedar Rapids, IA 52401
        Tel: 319-366-7641
        Fax: 319-366-1917
        lhartman@spmblaw.com
        acarls@spmblaw.com
        ATTORNEYS FOR LINCOLN SAVINGS BANK

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on February 10, 2021, a copy of the foregoing document was filed with the Clerk of Court for the United States Bankruptcy Court for the Northern District of Iowa using the CM/ECF system, and served electronically on those participants that receive service through the CM/ECF System.

        /s/ Abram V. Carls